**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARVIN ERNESTO LEON CERON,** | : | |
| | : | |
| **Petitioner,** | : | **3:26-cv-1762** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **ATTORNEY GENERAL OF** | : | |
| **THE U.S., *et al.*,** | : | |
| | : | |
| **Respondents.** | : | |

**MEMORANDUM OPINION**

Before the Court is petitioner Marvin Ernesto Leon Ceron's ("Petitioner") motion to enforce the Court's prior order granting habeas relief. (Doc. 15). For the reasons that follow, Petitioner's motion will be granted, and the Court orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a citizen of El Salvador, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on June 25, 2026. (Doc. 1). As detailed in the Court's prior memorandum opinion concerning Mr. Leon Ceron's petition for habeas relief (Doc. 9), Petitioner has been detained at FCI Lewisburg within the Middle District of Pennsylvania since November 20, 2024. (*See* Doc. 7 at 4). Accordingly, as of the date of this opinion, Petitioner has been detained for approximately 22 months. Petitioner, who previously pled guilty to assault in the second degree, was detained by ICE enforcement agents upon his

release from criminal custody. (Doc. 7-2 at 3; *see also* Doc. 18-2). Petitioner received a three (3) year sentence on the second-degree assault charge, composed of approximately six months of time served, 188 days suspended, and two (2) years of probation. (*Id.*). Thus, when Petitioner was detained, he had already completed his carceral sentence and was set for release on probation.

Petitioner is subject to detention under 8 U.S.C. § 1226(a). (*See* Doc. 9).[1] As such, Petitioner is entitled to a bond hearing,[2] and the Court's July 22, 2026 Order directed Respondent to provide Petitioner with an individualized bond hearing before an Immigration Judge ("IJ") within seven (7) days of the order's entry. (*See* Doc. 10). Despite the Court's prior Order, and Respondent's certification of compliance with that order (*see* Doc. 11), Petitioner was allegedly denied the presence of his counsel and the opportunity to present evidence at the July 22, 2026 bond hearing, which he was never given notice of in the first place. (*See* Doc. 15-3; Doc. 15-4). Respondent does not expressly dispute that Petitioner was denied the presence of counsel and the opportunity to present evidence at his bond hearing. Instead, Respondent states that "[t]his case does not fall under the 'fundamentally

---

[1] Since the Court's July 22, 2026 Order (Doc. 10) and Memorandum Opinion (Doc. 9), the Third Circuit has confirmed the Court's reasoning in support of its prior holding that § 1226, not § 1225(b), governs Petitioner's detention. *See Buele Morocho v. Warden Philadelphia FDC*, 2026 WL 2546223, at *7 (3d Cir. Aug. 28, 2026) (holding that detainees who have been present in the United States for extended periods of time and were not detained at the border are not within the scope of 8 U.S.C. § 1225(b)(2)(A).).

[2] It is well established that "noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to a bond hearing before an Immigration Judge." *Patel v. O'Neil*, 2025 WL 3516865, at *2 (M.D. Pa. Dec. 8, 2025).

unfair' exception to continued habeas jurisdiction ... [because] Petitioner *had* a bond hearing as ordered." (Doc. 17 at 5–6 (emphasis added)). Respondent notes that in order for the July 22, 2026 bond hearing to have complied with fundamental fairness, Petitioner "must be allowed to make arguments on his or her own behalf." (*Id.* (citing Ghanem v. Warden Essex Cnty. Corr. Facility, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022))). Despite arguing that Petitioner's July 22, 2026 bond hearing was fundamentally fair, and thus necessarily implying that Petitioner *did* have the opportunity to make arguments on his own behalf, Respondent offers no factual basis whatsoever for this claim. To the contrary, Respondent admits that the hearing's "audio was not reviewable" because "the Judge's microphone had inadvertently been turned off during the hearing[.]" (Doc. 17 at 2–3, 6).

Based on the aforementioned procedural defects, Petitioner filed the instant motion to enforce judgment on September 2, 2026. (Doc. 15). On the afternoon of Friday, September 4, 2026, apparently prompted by the instant motion, the US Attorney's Office requested that the Office of the Chief Immigration Judge schedule a new bond hearing for 9:30 AM on Tuesday, September 8, 2026, the day after Labor Day.[3] (Doc. 17-3 at 1 (notice of rescheduled bond hearing); *see also* Doc. 18-3 at 6 (confirming that "the US Attorney's

[3] Petitioner's habeas counsel was ostensibly given notice of the rescheduled bond hearing (*see* Doc. 18 at 1 ("Counsel was given notice on Friday afternoon for a hearing occurring Tuesday morning over a holiday weekend")), although the certificate of service included in the September 4, 2026 notice of rescheduled hearing does not indicate that Petitioner's counsel was served notice of the rescheduled bond hearing. (Doc. 17-3 at 1). However, Respondent's counsel states that he "provided the notice of the hearing to Petitioner's habeas and immigration counsel in case they wanted to appear and/or submit documentary evidence." (Doc. 17 at 6).

Office is the one that requested this hearing")). On September 8, 2026, Petitioner and his counsel appeared for the rescheduled bond hearing, at which the IJ noted, "So to be clear, we're here for a bond hearing that no one who is present [for] requested." (Doc. 18-3 at 3). The rescheduled bond hearing resulted in no bond determination, and the parties agreed to reschedule yet another bond hearing for September 16, 2026. (*See* Doc. 18-3 at 5–8; *see also* Doc. 17 at 3).

Respondent opposes the instant motion on the grounds that the relief sought is "moot" because "Petitioner had a bond hearing," and has a (third) bond hearing scheduled on September 16, 2026. (Doc. 17 at 6). Petitioner counters that his "prior proceedings before the Elizabeth Immigration Court confirm that he has not received procedural due process and is not likely to receive due process in future proceedings." (Doc. 18 at 1).

## II. <u>STANDARD OF REVIEW</u>

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). Courts frequently grant habeas relief without ordering the petitioner's immediate release by granting a "conditional writ":

> [C]onditional writs are essentially accommodations accorded to the state. They represent a habeas court's holding that an infirmity justifies petitioner's

> release. The conditional nature of the order provides the state with a window of time within which it might cure the error. When the state fails to cure the error, *i.e.*, when it fails to comply with the order's conditions, a conditional grant of a writ of habeas corpus requires the petitioner's release from custody.

*Haskell v. Folino*, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020) (citations and quotations omitted); *see also Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998) ("The Supreme Court 'has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.'" (citing *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987))).

Upon granting a petition for habeas relief, the Court retains continuing jurisdiction to ensure compliance with its prior order and correct non-compliance by a respondent. *See Shonhai v. Lowe*, 2026 WL 538865, at *6 (M.D. Pa. Feb. 26, 2026) (collecting cases); *see also Wilkins v. Doll*, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018) ("There is no question that this court has the power to enforce its writs of habeas corpus." (citing *Sylvain v. Attorney General*, 714 F.3d 150, 155 (3d Cir. 2013))). Thus, a habeas court "has absolute jurisdiction to ensure [a petitioner's] release and to otherwise enforce full compliance with the Writ" upon the Government's failure to correct a legal infirmity justifying habeas relief. *Haskell*, 461 F. Supp. 3d at 211.

## III. ANALYSIS

In the present motion to enforce, Petitioner alleges that the Government has failed to correct the infirmity that taints his detention—i.e., his incarceration without a constitutionally-sufficient bond hearing. The Court agrees.

Due process requires that an immigration detainee's bond hearing satisfy certain "essential elements": the detainee "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his interests." *Ghanem*, 2022 WL 574624, at *2. These essential elements are the constitutional *minimum*, and the Government does not get repeated bites at the apple until they get it right. The procedural requirements enshrined by our Constitution's right to due process ought to be provided in the first instance—that is, before Petitioner ever filed his habeas petition in the first place.

The Court's prior order permitted the Government seven (7) days to correct the infirmity in detaining Mr. Leon Ceron without a bond hearing. That order was conditioned on the presumption that the Government would provide a constitutionally adequate bond hearing within the specified time. The due process requirements for a bond hearing, as articulated by the *Ghanem* Court, are well-known and frequently relied upon in considering a motion to enforce a prior order granting habeas relief. *See, e.g., F.M.S. v. Lowe, et al.*, 2026 WL 2263555, at *6 (M.D. Pa. Aug. 6, 2026) (ordering noncitizen detainee's release);

*Shonhai v. Lowe*, 2026 WL 538865, at *13–15 (M.D. Pa. Feb. 26, 2026) (denying motion to enforce because bond hearing complied with due process). Petitioner has demonstrated that his prior hearing was constitutionally inadequate—he "was denied the presence of his attorney, was not given opportunity to present evidence on his own behalf, and had his request for a continuance to facilitate the same was denied." (Doc. 15 at 1 (citing Docs. 15-3, 15-4)). That bond hearing further appears to have been conducted without any notice. (*See* Doc 15-3, ¶ 4; Doc. 15-4 at 2). Under such circumstances, the Court is compelled to find that Petitioner has not been "allowed to make arguments on his or her own behalf," as his right to due process demands. *Ghanem*, 2022 WL 574624, at *2.

Respondent has not credibly rebutted Petitioner's showing that his prior bond hearings were procedurally deficient. Respondent has offered no evidence whatsoever that the July 28, 2026 hearing was constitutionally sufficient beyond the conclusory statement that "Petitioner had a bond hearing as ordered" and that "[t]his case does not fall under the 'fundamentally unfair' exception[.]" (Doc. 17 at 5–6). Notably, Respondent has never submitted any notice of the July 28, 2026 bond hearing, despite submitting notice of subsequent hearings. (Doc. 17-3). Respondent has never submitted a declaration disputing Petitioner's account of the July 28, 2026 bond hearing. Nor has Respondent even attempted to explain why Petitioner was denied the presence of his counsel at the July 28, 2026 bond hearing. Instead, Respondent misdirects the Court's attention by noting that "'evidentiary quibbles' … do not amount to fundamental unfairness[.]" (Doc. 17 at 6). It is

true that this Court lacks authority to "review an immigration judge's discretionary bail decision, [but] it most certainly has the power under its habeas jurisdiction to enforce compliance with its habeas writs." *Santos v. Lowe*, 2020 WL 4530728, at *2 (M.D. Pa. Aug. 6, 2020) (citation omitted). This Court is not faced with mere "evidentiary quibbles." Before the Court is unrefuted evidence of a constitutional deprivation in direct non-compliance with the Court's prior order. Rather than receiving a procedurally adequate bond hearing, Petitioner has received precisely the sort of "rubberstamp denials based on temporally distant offenses" that, according to the Third Circuit, do not satisfy due process requirements. *See Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398–99 (3d Cir. 1999). A bond hearing without notice, at which the detainee is denied the presence of his counsel, and at which he cannot meaningfully present evidence is precisely the sort of hearing that our Constitution structurally rejects.

The Government has had not one but two opportunities to afford Petitioner with a constitutionally sufficient bond hearing. It does not get a third chance to do what it should have done from the outset. *See Zheng v. Rokosky*, 826 F. Supp. 3d 545, 560 (D.N.J. 2026) (finding that "the only just remedy in these circumstances is immediate release"); *see generally Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (detailing history of the writ of habeas corpus and explaining that discharge from unlawful custody is the traditional remedy). Accordingly, the Court will order Petitioner's immediate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted. A separate Order follows.

Robert D. Mariani
United States District Judge