**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARVIN ERNESTO LEON CERON,** | : | |
| | : | |
| **Petitioner,** | : | **3:26-cv-1762** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **ATTORNEY GENERAL OF** | : | |
| **THE U.S. and JESSICA SAGE,** | : | |
| | : | |
| **Respondents.** | : | |

## MEMORANDUM OPINION

Before the Court is Respondent Jessica Sage's ("Respondent") Emergency Motion to Stay (Doc. 21) the Court's September 16, 2026 order directing Respondent to release Petitioner Marvin Ernesto Leon Ceron ("Petitioner") (Doc. 20), which followed a prior Order granting Petitioner conditional habeas relief. (Doc. 10). For the reasons that follow, Respondent's motion will be granted.

## I. BACKGROUND

Petitioner, a citizen of El Salvador, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on June 25, 2026, disputing his detention at FCI Lewisburg.[1] (Doc. 1). Petitioner prevailed on his petition and demonstrated that he was detained, at the time, pursuant to 8 U.S.C. § 1226(a) because the Third Circuit had issued a stay of his removal. (*See* Doc. 9 at 2). Thus, Petitioner showed he was entitled to a bond

---

[1] To date, Petitioner has been detained for more than 22 months. (*See* Doc. 7 at 4 (noting detention on November 20, 2024)).

hearing, which the court ordered be held on or before July 29, 2026. (Doc. 10). Respondent provided Petitioner with a procedurally deficient hearing on July 28, 2026. (*See generally* Doc. 19 (finding Petitioner has not received a procedurally adequate bond hearing under *Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624 (3d Cir. Feb. 25, 2022))). The record before the Court reflects that Petitioner was never given notice of that hearing, was denied the presence of counsel, was not given an opportunity to present evidence on his own behalf, and had his request for a continuance to facilitate the same denied. (*Id.*; *see also* Doc. 15-3; Doc. 15-4). Following that hearing, Petitioner filed a Motion to Enforce the Court's prior Order on September 2, 2026 with the assistance of pro bono counsel. (Doc. 15). Respondent suddenly arranged a second bond hearing, at which no substantive determination was made and the parties agreed to a continuance. (*See* Doc. 18-3). A third hearing was set for September 16, 2026, but the Court held that Respondent was not entitled to a third "bite[] at the apple" of due process. (*See* Doc. 19 at 6). Based upon a close review of the case law, the Court found that Petitioner must be released, as noncompliance by a respondent with a conditional writ of habeas corpus generally converts the writ into an order for immediate release. *See Haskell v. Folino*, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020); *see also Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998) ("The Supreme Court 'has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to

correct the constitutional violation found by the court.'" (citing *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987))).

However, in the intervening period after Respondent's non-compliance with the Court's July 22, 2026 Order granting a bond hearing and before Petitioner was ordered released, the Third Circuit lifted Petitioner's stay of removal on August 31, 2026. (*See* Doc. 21-2). The parties failed to articulate this critical fact when briefing Petitioner's Motion to Enforce the Court's July 22, 2026 Order. (*See* Docs. 15, 17, and 18). Because the Third Circuit lifted Petitioner's stay of removal, Respondent argues that Petitioner is no longer detained pursuant to 8 U.S.C. § 1226(a). (*See* Doc. 22 at 1–2). Instead, Respondent alleges, Petitioner is now within a 90-day period of mandatory detention, pursuant to 8 U.S.C. § 1231, which purportedly began on August 31, 2026. (*Id.* at 6). Petitioner answers that the applicable statute under which Petitioner should presently (if at all) be detained is a "red herring," irrelevant to the Court's order granting Petitioner's release. (*See* Doc. 24). According to Petitioner, the violation of Petitioner's due process rights was fully consummated prior to the Third Circuit's lifting of his stay of removal, and thus the relief Petitioner sought (and seeks) should not be stayed.

## II. STANDARD OF REVIEW

A motion to stay an order is generally treated like a preliminary injunction. The "traditional" standard for an emergency stay thus requires the Court to consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on

the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (citing *Hilton,* 481 U.S. at 776). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of th[e Court's] discretion." *Id.* at 433–34. No single factor is dispositive, but "[t]he first two factors"—likelihood of success on the merits and irreparable harm—"are the most critical." *Id.*; *see also Osorio-Martinez v. Attorney Gen. of United States*, 893 F.3d 153, 178 (3d Cir. 2018) (noting same).

In the appellate context, the Supreme Court has noted that courts evaluating whether to stay the release of a successful habeas petitioner may consider "such factors as the possibility of the prisoner's flight; the risk that the prisoner will pose a danger to the public if released; the State's interest in continuing custody; and the prisoner's substantial interest in release[.]" *Hilton*, 481 U.S. at 771.

## III. <u>ANALYSIS</u>

The question before the Court is whether Respondent has carried her burden to show that the Court's prior Order of release should be stayed. Although Petitioner urges the Court not to reach the issue of whether Petitioner is properly detained pursuant to 8 U.S.C. § 1231, the Court must reach this issue because (1) the basis for Petitioner's detention determines the likelihood of Respondent's success on the merits and (2) Petitioner will immediately (and properly, if the statute applies) be re-detained upon his release pursuant

to § 1231, which calls for *mandatory* detention of non-citizens who are subject to a final order of removal. 8 U.S.C. § 1231(a)(2)(A) ("During the [90-day] removal period, the Attorney General *shall* detain the alien." (emphasis added)). Upon careful review of the case law, the Court concludes that it must stay Petitioner's release.

### A. <u>Respondent has shown that Petitioner is subject to mandatory detention under § 1231.</u>

The Court first considers whether Respondent has shown a likelihood of success on the merits that the Third Circuit's vacatur of Petitioner's stay of removal mandates Petitioner's detention.

The statute governing mandatory detention of non-citizens subject to a final order of removal has been described as "inartfully drafted." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008); *see also Bah v. Cangemi*, 489 F. Supp. 2d 905, 916 (D. Minn. 2007). The statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (…the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). The statute further defines the removal period as follows:

> The removal period begins on the latest of the following:
>
> **(i)** The date the order of removal becomes administratively final.
> **(ii)** *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.*
> **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement

8 U.S.C. § 1231(a)(1)(B) (emphasis added). The "statute's basic purpose" is well established: "assuring the [non-citizen's] presence at the moment of removal." *Zadvydas v.*

*Davis*, 533 U.S. 678, 699 (2001); *see also Leslie v. Attorney Gen. of United States*, 678 F.3d 265, 270 (3d Cir. 2012) (noting "the purpose of § 1231 detention is to secure an alien pending the alien's certain removal"), *abrogated in part and on other grounds by Jennings v. Rodriguez*, 538 U.S. 281 (2018). Thus, § 1231 is meant to give the Government a clear, unencumbered period of time to remove non-citizens who have received extensive judicial review that determined their inadmissibility or deportability on the merits. The statute ideally would provide a 90-day clock with a clear "starting gun" for the non-citizen's removal period. Unfortunately, "the removal period begins on 'the latest of' several events. This necessarily means that one can only determine *retrospectively* when (or even whether) the removal period began. It follows that one's assessment of when (or whether) the removal period began might change over time." *Bah*, 489 F. Supp. 2d at 916 (emphasis in original).

Petitioner's case demonstrates precisely the difficulty of construing § 1231. Petitioner's order of removal became administratively final on April 22, 2026, when the Board of Immigration Appeals ("BIA") dismissed his appeal. (Doc. 7-5); *see also* 8 C.F.R. § 1241.1 ("An order of removal … shall become final…[u]pon dismissal of an appeal by the Board of Immigration Appeals[.]"). Thus, on April 22, 2026, one could fairly say a 90-day removal period and mandatory detention had begun under § 1231(a)(1)(B)(i). Petitioner promptly filed a Petition for Review of the BIA's denial, and he was granted a temporary stay of removal on April 24, 2026. (Doc. 7-6 at 21). As of April 24, 2026, then, Petitioner was no longer within the 90-day removal period at all, and he was detained pursuant to pre-

removal detention under § 1226. (*See* Doc. 9 at 2). On August 31, 2026, the Third Circuit lifted Petitioner's temporary stay of removal without adjudicating his Petition for Review on the merits, (Doc. 18-2 at 19), and, according to the Government, Petitioner once again became subject to mandatory detention, with the 90-day removal clock *actually* beginning. (Doc. 22). All the while, Petitioner has been subject to incarceration for almost two years—incarceration that was always meant to be "civil, not criminal, and ... nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690 (2001). The Court recognizes the manifest unfairness of a statutory scheme that provides the basis for an individual's release one day[2] and then requires his detention the next. *See Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 755 (M.D. Pa. 2004) ("While a stay of removal may suspend the running of the removal period, it does not toll the clock on the life of a person held in prison awaiting adjudication of the merits of his challenge to the validity of a removal order.").

The Court has been unable to identify any binding case law decided under similar factual circumstances, in which a detainee received an order staying his removal and the stay was lifted by the Circuit Court *before* issuing a final order. However, persuasive authority and extensive dicta support Respondent's position on the merits that Petitioner became subject to mandatory detention upon the Third Circuit's vacatur of his temporary stay of removal.

---

[2] As previously articulated, Petitioner was entitled to release after Respondent's non-compliance with the Court's July 22, 2026 order. *See generally* Doc. 19.

In *Granados v. Green*, a non-citizen detainee, whose Petition for Review was pending with the Third Circuit, received a temporary administrative stay of removal. 2016 WL 1572540, at *2 (D.N.J. Apr. 19, 2016). The *Granados* petitioner was granted habeas relief in the form of a bond hearing during the pendency of his Petition for Review; however, one day after he was granted a bond hearing, the Third Circuit lifted his temporary stay of removal, transforming the basis of that individual's detention, just like in the present case. *Id.* The *Granados* Court ultimately found:

> Because that [stay] order was vacated, it is of no moment and no effect, and thus as of the date of the order denying the motion for a stay and vacating the temporary stay, Petitioner was again subject to final order of removal and had returned to the removal period and in turn detention under § 1231 … Because Petitioner is currently detained under 8 U.S.C. § 1231(a), the propriety of his detention is governed by the Supreme Court's decision in *Zadvydas*, 533 U.S. at 701.

2016 WL 1572540, at *3–5 (citing *Leslie*, 678 F.3d at 270).

Beyond *Granados*, the Court has identified substantial dicta that indicates a Circuit Court's vacatur of a stay of removal triggers mandatory detention. In *Johnson v. Guzman Chavez*, the Supreme Court described "a court order lifting a stay" as one of the "triggers for the removal period," although that case concerned § 1231(a)(1)(B)(i), not § 1231(a)(1)(B)(ii). 594 U.S. 523, 533 n.5 (2021). The Ninth Circuit has likewise noted that the "sensible reading of [§ 1231] is that if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay *or* (2) grants the motion *and* finally denies the petition for review." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 at n.5 (9th Cir. 2008) (emphasis in original); *see also Garcia v. Kane*, 2009

WL 1159074, at *4 (D. Ariz. Apr. 29, 2009) (noting that § 1231 does not apply "until the court renders its decision *or lifts the stay*" (emphasis added)). The Third Circuit has noted that "there can be little doubt that an alien, *subject to and within a stay of removal*, cannot yet be in the 'removal period' for § 1231 purposes," implying that vacatur of a previously-granted stay triggers the removal period. *Leslie*, 678 F.3d at 270 (emphasis added); *see also Michel v. I.N.S.*, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000) ("If a court issues a stay, the removal period begins when the stay is lifted.").[3]

Based on the above persuasive authority, the Court finds that Mr. Leon Ceron is subject to mandatory detention. Petitioner has not expressly refuted Respondent's argument that the removal period has begun, and thus the Court must find that Respondent has carried her burden of showing success on the merits.[4]

**B. Respondent may suffer irreparable harm if the Court does not stay Petitioner's release.**

Although a showing of irreparable harm is one of the two "most critical" factors a

---

[3] There is a colorable argument that "entry of '*the court's final order*' is the triggering event which restarts the removal period under section 1231(a)(1)(B)(ii)," not vacatur of a stay. *D. A. F. v. Warden, Stewart Det. Ctr.*, 2020 WL 9460467, at *5 (M.D. Ga. May 8, 2020), *report and recommendation adopted in part*, 2020 WL 9460341 (M.D. Ga. July 24, 2020) (emphasis in original) (noting that the stay is "[a]t most…[a] precondition[] to a triggering event"). However, Petitioner has not briefed this issue, and the Court has not identified sufficient case law to hold that a detainee who was at one point granted a stay of removal may not be removed until the staying court issues its final order on a Petition for Review.

[4] Even if Petitioner is subject to mandatory detention, it is not clear that his removal period began on August 31, 2026, as Respondent alleges. *See Granados*, 2016 WL 1572540, at *5 (declining to reach the unripe issue of whether a detainee's removal period began "six months from the date of the BIA's denial of his appeal … [or] six months from the date on which the Third Circuit vacated his temporary stay of removal" because neither six month period had passed); *see also Wilson v. Green*, 2016 WL 4571389, at *3 (D.N.J. Sept. 1, 2016) ("Initially, the Court notes that the propriety of Petitioner's habeas challenge depends entirely on the date that his order of removal once again became final.").

Court considers when evaluating a motion to stay, *Nken*, 556 U.S. at 434, Respondent has not briefed this issue. Nonetheless, the Court takes judicial notice of recent Third Circuit case law, which notes that the "inability to enforce its duly enacted plans clearly inflicts irreparable harm" on the Executive Branch. *Aristy-Rosa v. Attorney Gen. of United States*, -- F.4th --, 2026 WL 2363039, at *4 (3d Cir. Aug. 14, 2026) (citing *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018)). Insofar as Respondent is required under § 1231 to detain Petitioner, the Court finds that Respondent will be irreparably harmed by an order of release, which would impair Respondent from fulfilling her statutory obligations.

On the other hand, Respondent has not alleged that Petitioner's release would actually mitigate or delay Petitioner's eventual removal once the proper deportation documents are secured by the Government. Given that the movant carries the burden of showing entitlement to a stay, *Nken*, 556 U.S. at 433–44, the Court will not speculate as to possible harms on her behalf, especially because "[a] 'possibility' of irreparable harm will not cut it." *Id.* at *3 (citing *Nken*, 556 U.S. at 435). Thus, upon the record before the Court, this factor cuts only marginally in favor of issuing a stay.

**C. Staying Petitioner's release will substantially injure Petitioner through continued deprivation of his liberty.**

The Court next considers "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 426. Petitioner has already shown that he has been detained unconstitutionally for nearly two years without a procedurally adequate bond hearing. (*See generally* Doc. 19). He has missed two of his

son's birthdays (Doc. 18-2 at 17). It is practically indisputable that a detainee has a "substantial interest in release" from custody, particularly where, as here, there are significant due process concerns. *Hilton*, 481 U.S. at 771. This factor cuts decisively against issuance of a stay.

**D. The public interest cuts neither in favor nor against issuing a stay of Petitioner's release.**

The final factor the Court considers when determining whether to grant a stay is "where the public interest lies." *Nken*, 556 U.S. at 425–26.

The Supreme Court has noted that "[t]here is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permits and prolongs a continuing violation of United States law.'" *Nken*, 556 U.S. at 436 (citation omitted). However, as noted above, there is no allegation that Petitioner's release from custody would actually delay execution of his removal order. Still, the public's interest in the enforcement of immigration law, including § 1231, which subjects Petitioner to mandatory detention, is not insignificant. Additionally, the public may have a safety interest in staying Petitioner's release based on his prior conviction of assault in the second degree. The Court notes this safety interest but does not accord undue weight to it given that Petitioner completed his carceral sentence already and provided extensive letters of support affirming his upright character and commitment to public safety. (*See generally* Doc. 18; Doc. 18-2).

In contrast, “it is squarely in the public interest to enable individuals to partake of statutory and constitutional rights and meaningful judicial review where, as here, it is consistent with the process prescribed by Congress.” *Osorio-Martinez*, 893 F.3d at 179. Petitioner correctly points out that not only has he been denied due process, but granting a stay based on changed circumstances “incentivize[s Respondents] to delay and otherwise frustrate the vindication of the right to a bond hearing until some change in the merits of the underlying immigration proceedings renders…habeas proceedings moot.” (Doc. 24 at 3). The public has an interest in faithful observance of the law, and Respondent’s “protracted period of disobedience of a court order” cannot vindicate lawfulness. (*Id.* at 2). “The only reason Mr. Leon Ceron did not receive the relief he was entitled to at the time his detention was still under § 1226(a) was because of the government’s own failure[.]” (*Id.* at 2).

Based on the aforementioned competing public interests, the Court finds that this factor does not cut decisively in favor of or against issuance of a stay of the Court’s prior Order of release.

**E. The four factors, on balance, counsel in favor of issuing a stay of the Court’s prior release order.**

The four “traditional stay factors contemplate individualized judgments in each case,” and “the formula cannot be reduced to a set of rigid rules.” *Hilton*, 481 U.S. at 777. After balancing the various interests in this case and upon a close review of the law at issue, the Court finds that it must issue a stay of Petitioner’s release. Absent a compelling showing, as a matter of law, that Petitioner is not properly detained pursuant to § 1231, the Court

must accord proper weight to Respondent's likelihood of success on the merits. The basis for Petitioner's detention changed on August 31, 2026, and that fact is all but dispositive here. While the other three factors for a stay either cut against or cut only marginally in favor of issuing a stay, the serious legal question Respondent raises outweighs Petitioner's substantial interest in immediate release.

Nothing in this opinion shall be construed as an endorsement or allowance of Respondent's non-compliance with the Court's July 22, 2026 order granting Petitioner habeas relief. (Doc. 10). On the contrary, the Court reiterates its finding that Respondent failed to provide Petitioner with a Constitutionally sufficient bond hearing while he was detained pursuant to § 1226. (Doc. 19). During the period of Respondent's non-compliance, Petitioner's release from custody was not only justified, but demanded by the laws and Constitution of the United States. The grave nature of Mr. Leon Ceron's prolonged detention is not a matter the Court treats lightly. However, because Petitioner's detention is now governed by § 1231, the Court cannot order Petitioner's release during the mandatory detention and removal period. The Court's decision on Respondent's Emergency Motion to Stay is without prejudice to any remedy Petitioner may subsequently become entitled to, including under *Zadvydas*.[5] 533 U.S. 678 (2001).

---

[5] Petitioner's removal period either began on April 22, 2026 (the date the BIA denied his appeal), or on August 31, 2026 (the date the motion to stay removal was denied), and thus his release under *Zadvydas* is not ripe for adjudication until either October 22, 2026, or February 28, 2027. Once this issue is ripe, the Court will consider an appropriate motion by Petitioner, on the date he alleges he ought to be released, if he has not been removed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Respondent's Emergency Motion to Stay the Court's September 16, 2026 Order directing Respondent to release Petitioner. A separate Order follows.

Robert D. Mariani
United States District Judge